# SUPERIOR COURT OF
# THE DISTRICT OF COLUMBIA

CARNECIA ROBINSON
3508 6th St SE
Washington DC, 20032

FLORENCE R. BARBER
1138 Barnaby Terrace SE
Washington DC, 20032

    Plaintiffs,

v.

BOARD OF ELECTIONS
1015 Half Street, SE, Suite 750
Washington, DC 20003

    Defendants.

Civil No.

## COMPLAINT FOR EMERGENCY INJUNCTIVE RELIEF

**I.**    **Introduction**

In response to COVID-19, the Board of Elections closed 14 of the 17 polling locations in Ward 8, encouraged mail-in voting, and provided information for receiving mail-in ballots almost solely through mailed correspondence. Since at least 2019, an unknown number of Ward 8 residents have been receiving mail intermittently and sporadically. As a result, Ward 8 residents who have not been receiving mail have not been receiving mail-in ballots like residents in other parts of the city. Ward 8 is 92.06% African American whereas the city as a whole is only 44.53%

African American.[1] The Board of Election's policy to change nearly everything about the electoral process, by mail, will have the effect of disenfranchising countless African American voters because Ward 8 voters have not been reliably receiving mail for at least a year and Ward 8 voters are overwhelmingly African American. The voters who did not receive their mail in ballots will have to travel to the polls to exercise their right to vote. The public health emergency and curious polling locations will alternatively depress voter participation and create grave health risk among residents. African American Ward 8 voters seek the protections of Section 2 of the Voting Rights Act, and equitable relief, from this Court in time for the BOE to prepare another polling location in Ward 8 by May 26, 2020[2].

## II.    Jurisdiction

A. Jurisdiction is proper pursuant to D.C. Code §11-921. Personal jurisdiction is proper against Defendant as it is an Independent Agency that operates in the District of Columbia.

B. The Premises is located in the District of Columbia. All acts given rise to these claims occurred in the District of Columbia.

C. Venue is proper pursuant to D.C. Code §§ 13-422 and 13-423 on the basis that the Defendant is an Independent Agency in the District of Columbia that committed acts and omissions in the District of Columbia. All plaintiffs live in the District of Columbia.

## III.    Parties

A. Plaintiffs

---

[1] DC Health Matters, citing to http://www.dchealthmatters.org/demographicdata?id=131495&sectionId=940
[2] Plaintiffs' Motion for Injunctive Relief and TRO will be filed later today.

Carnecia Robinson – Ms. Robinson is an African American Ward 8 resident who lives at 3508 6th St SE #3. Ms. Robinson has been receiving unreliable mail service in the years since she has been living at Congress Heights and Congress Park. She never received a mailed copy of her Voters' Guide in order to request her absentee ballot. Over the years, Ms. Robinson has filed several complaints concerning disruption to her mail service.

Florence R. Barber – Ms. Barber is an African American and long-time Ward 8 resident who lives at 1138 Barnaby Terrace SE, Washington DC 20032. Ms. Barber did not receive mail between May 9, 2020 and May 14, 2020. Ms. Barber never received a Voters' Guide or Absentee Ballot from the Board of Elections. Ms. Barber has been receiving irregular mail service for a number of years. Mr. Barber states COVID-19 has made irregular mail delivery even more of a problem.

    B.  Defendant

Board of Elections (hereinafter BOE) - The District of Columbia Board of Elections (DCBOE) is the independent agency of the District government responsible for the administration of elections, ballot access, and voter registration. DCBOE consists of three active Board members, an Executive Director, and a General Counsel and a number of support staff who run the day-to-day operations of the Agency.

**IV.   Facts**
1. In recent years, DC residents have had an option to 1) vote in person on Election Day, 2) vote in person prior to Election Day at the BOE, 3) vote at early vote sites and 4) vote by absentee, through the mail. Though absentee voting was neither promoted or widespread.

2.  This year, due to the public health emergency, the BOE has placed an emphasis on voting by absentee.

3.  On that basis, in April of 2020, the BOE reduced the election voting sites from every precinct in Ward 8 seventeen to three and notified people of the shift from in person voting to absentee voting primarily through Voters' Guides sent by mail.

4.  Unfortunately, for Ward 8 voters Ward 8 residents do not regularly receive US mail and have not for years. Exhibit A.

5.  Over the years, Area Neighborhood Commissioner's (hereinafter ANC's) and leaders of Civic Organizations fielded numerous complaints from residents that they had received intermittent or sporadic mail delivery for sometimes weeks at a time. Exhibit A, B.

6.  Recently, complaints about not receiving mail appeared on listservs and social media where they were corroborated by other Ward 8 residents experiencing the same mail service disruptions. Exhibit C.

7.  Complaints about lack of mail service escalated to Congresswoman Eleanor Holmes Norton who engaged the Postmaster. Exhibit B.

8.  The Postmaster admitted to being aware of the problem and stated the lack of mail service in Ward 8 was the result of budget related short staffing caused by COVID-19, and that the problem would be resolved by pulling postal carriers from other routes and re-assigning them to Ward 8. Exhibit D.

9.  That explanation from the Postmaster notwithstanding, Ward 8 residents still receive their mail, intermittently and sporadically, and many have not yet received their requested mail-in ballots. Exhibit A.

10. Many Ward 8 residents were receiving their mail intermittently and sporadically when the Voters' Guides were being sent by the BOE. Therefore, Ward 8 residents never received instruction on how to request a mail-in ballot; never received instruction on when the mail-in ballots were due; and never received instruction on the new polling locations.

11. Additionally, many Ward 8 residents were receiving their mail intermittently and sporadically when their Ballots were being sent. Exhibit E.

12. A greater than expected number of Ward 8 voters will have to appear in person to vote.

13. Election Day will be confusing for many Ward 8 voters who have not received their ballots or instructions on where to vote from the BOE.

14. Fear of deadly disease will depress voter participation among voters who sought mail-in ballots and never received them, and now have to vote in-person.

15. Long lines and overcrowded polling places will also discourage voters from completing their ballots and contribute to depressed voter participation.

16. Overcrowded polling places caused by an insufficient number of polling locations pose a public health risk. Exhibit F.

17. Ward 8 is a hotspot for COVID-19. Ward 8 residents die from COVID-19 at a rate far disproportionate to the rest of the city.

18. COVID-19's disproportionate effect on Ward 8 residents has shown a spotlight on the structural inequalities in Ward 8 compared to the rest of the city:

   a. 24.84% of Ward 8 households earn under $15,000 per annum compared to 12.58% of District of Columbia households.

b. 30.73% of Ward 8 families live below the poverty line compared to 13.51% of District of Columbia families.

c. 24.36% of Ward 8 families with children live below the poverty line compared to 9.99% of District of Columbia families with children.

d. 17.39% of Ward 8 residents are unemployed compared 6.76% of District of Columbia residents.

e. Despite its geographical isolation, 42.84% of Ward 8 residents do not own a vehicle compared to 35.89% of District of Columbia residents.

19. For Ward 8 residents, inefficiencies with US Mail have exacerbated the problems of *voting* during COVID-19.

20. Ward 8 residents not regularly receiving mail is representative of yet another structural inequality befallen Ward 8 residents.

21. To prevent further health crisis and the disenfranchisement of almost exclusively African American voters, the city must act to prevent a totally predictable calamity at the polls beginning May 22nd and continuing through June 2, 2020.

22. Due to unreliable mail delivery, many Ward 8 residents will appear at some polling place on June 2, 2020, since that is the most widespread date affiliated with the election.

23. Ward 8 residents have by and large not availed themselves of mail-in ballots, at least partially because of difficulties with US Mail. Exhibit G.

24. BOE selected three polling places: Barry Farm Recreation Center, Anacostia High School, and Malcolm X Opportunity Center, which will further depress voter participation.

25. Historically, the most populous voting centers in Ward 8 are located along Southern Ave. Exhibit H, I.

26. Of the three polling locations in Ward 8, two are on geographically opposite ends of the Ward from the most populous voting precincts: 125, 121, 116, 126, and 124. These two are the Barry Farm Recreation Center and the Anacostia High School. Exhibit I, K.

27. The other polling location is the Malcolm X Opportunity Center, which is roughly the geographic center of Ward 8. *Id*.

28. Recent demographic change in Ward 8 has concentrated mostly in the Fairlawn neighborhood, where some gentrification has occurred, and the residents are on average whiter than the residents in the rest of Ward 8. Exhibit J.

29. The Fairlawn Neighborhood is sandwiched between Anacostia Highschool and Barry Farm Recreation Center, giving those Ward 8 residents neighborhood level walking access to two nearby polling locations. Exhibit I.

30. The most populous voting precincts in Ward 8, along Southern Ave, also have the highest concentration of African Americans. Exhibit H, I, J.

31. Voters in the precincts along Southern Avenue are closest to Malcolm X Opportunity Center. Exhibit H and I.

32. 3rd St., Woodland, and Buenavista neighborhoods have gang rivalries which will discourage voter participation at the Malcolm X Opportunity Center for nearby residents.

33. Moreover, Anacostia High School and Barry Farm Recreation Center are not within walking distance for voters from the most populous voting precincts. Exhibit H, I.

34. Public transportation from the most populous voting precincts to Anacostia High School or Barry Farm Recreation Center is not only risky during the pandemic, but also, bus service has been limited during the pandemic.

35. Even during normal times bussing from one end of the Ward to the other can take over an hour.

36. Voters from the most populous voting precincts in Ward 8, are among the most disinvested and financially impoverished in the city and will likely visit the nearest location at the Malcolm X Opportunity Center.

37. Malcolm X Opportunity Center is not within walking distance of 4 of the 5 most populous voting precincts in Ward 8 (precincts 125, 121, 126, 124). Exhibit H, I.

38. Since the five most populous voting precincts are only somewhat convenient to one polling location it will lead to overcrowding and a significant public health risk for voters, many of which never received mail-in ballots or Voters' Guides, and through no fault of their own must appear in person in order to vote.

39. Only having one polling location convenient to the most populous voting precincts when many voters did not receive absentee voting materials will result in overcrowding and a significant health risk for voters, which will force almost exclusively African Americans to choose between their health and voting.

## Count One
**Voting Rights Act, Section II**
**52 USC 10301**

40. Plaintiff incorporates paragraphs 1-39 as if stated herein.

41. A violation of the Voting Rights Act is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a protected class.

42. If members of a protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice then that violates the Voting Rights Act.

43. The BOE's response to the COVID-19 public health crisis has been to close the majority of polling locations city wide, as well as 14 of the 17 polling locations located in Ward 8.

44. Instead of in-person voting, the BOE encouraged District residents to request mail-in ballots via Voters' Guides that the BOE mailed to residents.

45. While the BOE changed nearly every aspect of the voting process, notifying registered DC voters of the changes by mailed Voters' Guides, Ward 8 residents were not receiving mail.

46. While the BOE mailed mail-in ballots that had been requested, Ward 8 residents were not receiving mail.

47. The BOE knew, or should have knew, about complaints that Ward 8 residents were not receiving mail.

48. Ward 8 is 92.06% Black whereas the rest of DC is 44.53% Black.

49. Given the totality of the circumstances, such as the recent, hastily implemented policy shifts by the BOE, the levels of inequality persistent in Ward 8 for decades and the longstanding failure of the District of Columbia government to address equity in Ward 8, the longstanding structural issues with Ward 8 residents receiving mail, and polarized voting in Ward 8 compared to the rest of the city, the BOE should have conducted targeted outreach among Ward 8 residents, providing them with alternative methods of receiving absentee voting materials other than US Mail, in order to allow Ward 8 residents equal

opportunity to participate in the electoral process compared to residents in other parts of the city.

50. Section 2 of the voting rights Act requires that the BOE provide Ward 8 residents, whom are 92.06% African American, with the opportunity to participate in the election process on par with other residents in the city.

51. Since the BOE thus far has not conducted targeted outreach for Ward 8 residents, BOE's procedures for absentee voting during the time of COVID-19 and enhanced public health risk was imposed in such a manner so as to abridge a contingent of potential voters that are 92.06% African American of their ability to vote.

## Count 2
### Voting Rights Act, Section 2
### 52 USC 10301

52. Plaintiff incorporates paragraph 1-51 as if stated herein.

53. A violation of the Voting Rights Act is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a protected class.

54. If members of a protected class have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice, then that violates the Voting Rights Act.

55. The BOE's hyperlocal, Ward 8 response to the COVID-19 health emergency has been to close 14 of the 17 voting precincts.

56. Of the BOE designated polling locations, every single one of them is located in, or directly adjacent to, the most non-African American census tracts in Ward 8. 28% African

American (Barry Farm Recreation, CS 71.04, 28% African American; Anacostia High School, CS 76.05, 84.74% African American; and, Malcolm X Opportunity Center, CS 98.04, 88.91% African American) Exhibit J.

57. By contrast, 4 of the 5 most segregated African American and populous voting precincts in Ward 8 have no easily accessible or walkable voting locations in or adjacent to them (precincts 125, 121, 126, and 124).

58. The most segregated and populous voting precincts in Ward 8 only received one voting location that is somewhat convenient.

59. The most populous voting precincts in Ward 8 are nearly 100% African American, with only one precinct (precinct 116) below 96.5% African American.

60. Given the totality of the circumstances, such as the recent, hastily implemented policy shifts by the BOE, the levels of inequality persistent in Ward 8 for decades and the longstanding failure of the District of Columbia government to address equity in Ward 8, the longstanding structural issues with Ward 8 residents receiving mail, the polarized voting in Ward 8 compared to the rest of the city, and the relative geographic isolation of Ward 8 residents coupled with less likelihood of owning a car and higher likelihood of living in poverty, BOE should open more polling places or at least geographically distribute the polling places throughout Ward 8, in order to allow Ward 8 residents in the most segregated and populous voting precincts equal opportunity to participate in the electoral process compared to residents in other parts of the ward that have more white people.

61. Section 2 of the Voting Rights Act requires that the BOE provide residents of Ward 8, including those that live in the most populous voting precincts and are nearly 100% African American, with the opportunity to participate in the election process on par

with residents in less segregated neighborhoods like Fairlawn and the Navy base ,which are statistically whiter than the rest of Ward 8.

62. BOE's practice of placing the majority of polling locations in whiter neighborhoods during the time of COVID-19 and enhanced public health risk was imposed in such a manner so as to abridge a contingent of nearly 100% African American voters who live in the most populous voting precincts in Ward 8 of their ability to select a candidate of their choosing by diluting African American vote through manipulation of polling locations.

### V.   Conclusion

For the foregoing reasons, Plaintiffs pray the court extends Section 2 Voting Rights Act protection to plaintiffs and similarly situated African American voters, so they may participate in fair elections.

*Wherefore*, Plaintiffs seek the following relief:

A. Order Defendant to provide additional polling locations in the most populous precincts, such as at Ferebee Hope or Hendley School.

B. Order Defendant to pay court costs and attorney's fees.

Respectfully submitted,

s/Aristotle Theresa, Esq
Aristotle Theresa (DC Bar No. 1014041)
STOOP LAW
1604 V St SE
Washington DC, 20020
(202) 651-1148
actheresa@stooplaw.com

**CERTIFICATE OF SERVICE**

I, Aristotle Theresa, hereby certify a true and correct copy of the foregoing COMPLAINT was served to the following defendants on May 18, 2020.

Terri D. Stroud, Esq
BOARD OF ELECTIONS
General Counsel
1015 Half Street, SE, Suite 750
Washington, DC 20003
tstroud@dcboe.org

Tel: (202) 727-2525

                                                              s/Aristotle Theresa, Esq
                                                              Aristotle Theresa (DC Bar No. 1014041)
                                                              STOOP LAW
                                                              1604 V St SE
                                                              Washington DC, 20020
                                                              (202) 651-1148
                                                              actheresa@stooplaw.com